Ahren A. Tiller, Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026
Email: ahren.tiller@blc-sd.com

Abbas Kazerounian (SBN: 249203)
Kazerouni Law Group, APC
245 Fischer Avenue, Ste. D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Email: ak@kazlg.com

Attorneys for Plaintiff
GULLIERMO ESPINOZA,
Individually and On Behalf of
All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO ESPINOZA, Individually and On Behalf of All Others Similarly Situated , <br><br> Plaintiff, <br><br> vs. <br><br> WALMART INC.; GREEN DOT CORPORATION; GREEN DOT BANK DBA BONNEVILLE BANK; and DOES 1-50; inclusive, <br><br><br> Defendants. | Case No.: **'19CV1972 MMA RBB** <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Violations of the California Consumer Legal Remedies Act, Cal. Civ. C. § 1780, *et. seq.* <br><br> 2. Violations of the California Unfair Competition Law, Cal. Bus. & Prof. C. § 17200, *et. seq.* <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, GUILLERMO ESPINOZA, complains and alleges as follows:

## PARTIES

1. Plaintiff GUILLERMO ESPINOZA ("Plaintiff"), is and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

- 1 -

2.   Defendant WALMART, INC. ("Walmart") is a Delaware Corporation whose primary business purpose is the sale goods and services to consumers, and is registered to do business in the State of California.

3.   Defendant GREEN DOT CORPORATION is a Bank Holding Company and the parent of the FDIC registered national bank GREEN DOT BANK DBA BONNEVILLE BANK, (collectively referred to as "Green Dot"), whose primary business is issuing and servicing pre-paid and reloadable debit card accounts to consumers nationwide.

4.   Plaintiff is ignorant of the true names, capacities, and/or liabilities of the additional tortfeasors sued herein as Does 1-50, inclusive, and therefore sues these Defendants by such fictitious names, and alleges that Does 1-50 are independently responsible and/or vicariously liable and/or liable via an agency relationship in some manner for the occurrences herein alleged.  The Plaintiff will amend this Complaint to allege defendants Does 1-50's true names, capacities, and/or liabilities when ascertained.

## JURISDICTION AND VENUE

5.   At all times relevant herein, Plaintiff resided, and currently resides, in the City of Escondido, San Diego County, in the State of California.

6.   Walmart is a foreign corporation incorporated in the State of Delaware.  As of the date of this complaint, Walmart operates over three-hundred (300) retail store locations in the State of California, and over twenty-five (25) retail store locations in San Diego County.

7.   Greendot is a foreign corporation incorporated in the State of Delaware, which conducts intrastate commerce as well as interstate commerce within California.  Greendot does business throughout the State of California, and provides its debit cards for sale to consumers in San Diego County.

8.  Further, Jurisdiction and Venue are proper in this Court, because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego.  Furthermore, his Court has jurisdiction over this action under 28 U.S.C. §1332(d), because this is a proposed class action in which: (i) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (ii) members of the proposed Class are citizens of a State different from Defendants; and (iii) the number of Class Members is greater than 100.

## FACTUAL ALLEGATIONS

9.  Plaintiff incorporates by reference and realleges all preceding paragraphs as though fully set forth herein.

10. On or about February 27, 2019, Plaintiff went to a Walmart retail store located at 732 Center Dr., San Marcos, CA 92069, ("San Marcos Walmart") and purchased two (2) pre-paid Greendot VISA debit cards for $500.00 each ("Plaintiff's Greendot Cards.")

11. Plaintiff intended to use Plaintiff's Greendot Cards to pay his rent due on March 1, 2019.

12. The next day, Plaintiff attempted to use Plaintiff's Greendot Cards to pay two payments of $500.00 towards his rent, and they were denied several times for having insufficient funds.

13. Plaintiff went back to the San Marcos Walmart and asked an unidentified female Walmart Associate Checker ("Walmart Checker") to assist him.  When Plaintiff described the issue and showed his receipt for the purchases, the Walmart Checker advised him to try again later or the following day, stating that she believed it may just take a few days for the cards to activate.

14. Later that same day, Plaintiff called the toll-free number on the back of the Plaintiff's Greendot Cards to check the balances for the cards and the

automated systems stated that the available balances were $499.00 for one of the cards and $500.00 for the other.

15. On March 1, 2019, Plaintiff again called the toll-free numbers on the back of Plaintiff's Greendot Cards, and this time one card had a posted transaction for $498.74 at a separate Walmart store in Hemet, CA.  Plaintiff then checked the balance of the Plaintiff's second Greendot Card, and it had a nearly identical transaction, showing a charge also at a Walmart located in Hemet, CA, but this time for $497.74.

16. Upon seeing the charges to the Plaintiff's Greendot cards, Plaintiff was furious, confused, and anxious as he needed the funds to pay his rent.  On that same day, the Plaintiff called Defendant Greendot to dispute the fraudulent charges, but the Greendot employee Plaintiff spoke to stated that the cards were unregistered, and that Plaintiff must first register them before Greendot could provide any customer service regarding the Plaintiff's Greendot cards.

17. Plaintiff then ended the call, went online and registered the cards per the Greendot employee's instructions.

18. Once the cards had been registered, Plaintiff then placed a second call to Greendot and spoke to another Greendot employee, whereby he requested that the fraudulent charges be reversed.  The Greendot employee told Plaintiff that since the charges had been made prior to Plaintiff registering the cards, Greendot would not process any disputes for the transactions, and advised Plaintiff that his only recourse was to address the issue with Walmart, stating it was a "…Walmart issue."

19. Plaintiff then called the Walmart in Hemet, CA where the fraudulent transactions occurred.  Plaintiff spoke to a floor manager ("Floor Manager") and told her about the fraudulent activity, and in response the Floor Manager told Plaintiff that there had been several similar "scams" that had have occurred recently regarding the Walmart/Greendot Visa Gift Cards.  The

Hemet, CA Walmart Floor Manager stated that the information from those gift cards "were compromised" and that "…as soon as they get activated a hacker can liquidate the gift cards."  The manager then advised Plaintiff to contact Walmart headquarters, whereby the Floor Manager provided Plaintiff with a phone number for Walmart's "fraud hotline."

20. Following his call with the Floor Manager, Plaintiff called the Walmart fraud hotline and spoke to a Walmart representative who opened a case for Plaintiff, provided him with a reference number of: 190301-04031, and requested Plaintiff e-mail her all information and documentation Plaintiff had regarding the fraudulent transactions.  The Hemet, CA Walmart Floor Manager also advised Plaintiff to contact the police and file a report regarding the fraudulent charges.

21. After ending the call, Plaintiff then contacted the Sheriff's department and filed a police report, with case number: 19110546.

22. On March 2, 2019, Plaintiff emailed the Walmart fraud department representative all of his documentation regarding the fraudulent Plaintiff's Greendot Cards, including the police report.

23. After three days had passed and Plaintiff had not heard from the Walmart fraud department representative, he contacted the same Walmart Fraud Representative he spoke with on March 2, 2019, and was told only that Walmart had escalated his issue to an executive review team, and were "still investigating" the matter.

24. Plaintiff subsequently called every three (3) to four (4) days to request updates, but each time was told only that the investigation was ongoing.

25. On March 15, 2019, Plaintiff called again to check on the status of Walmart's investigation, and this time a Walmart fraud department representative told Plaintiff that executive review team had reviewed his claim, and that Walmart had completed its "investigation" and could not assist Plaintiff, because

Walmart was "not liable for those Visa Gift Cards." The Walmart Respresentative on said March 15, 2019 phone call stated that "we activated the cards, what happens after that is an issue with Greendot," and told Plaintiff his only option was to follow up with Greendot, the issuing bank.

26. That same day, Plaintiff contacted Greendot and spoke to a Greendot representative regarding the issue. Plaintiff explained to Greendot that Walmart's fraud department had investigated the matter and advised him that they were not liable, and that Plaintiff must pursue the issue exclusively through Greendot. The Greendot representative responded stating that Greendot was not liable, and that the facts suggested it was a scam that they frequently see with Walmart Visa Debit Cards, and explained that Greendot believed scammers obtain the Walmart Visa Debit Card information prior to Plaintiff purchasing the cards from Walmart, and that the individuals who obtain the Greendot Cards' information in turn then periodically attempt $1.00 charges to determine when the cards have been activated, and once the $1.00 charge is approved, the scammers spend the remainder of the card's available balance before a purchaser could use their Greendot Cards. The Greendot representative went on to say that despite Greendot's knowledge of the "scam," Greendot could not do anything to assist Plaintiff, and referred Plaintiff back to Walmart.

27. Plaintiff was recently laid off prior to this event with Walmart regarding Plaintiff's Greendot Cards, and therefore was unable to timely maintain his rent payments as a result of the Defendants' joint conduct.

28. On information and belief, Walmart chooses to sell its Greendot funded Visa Debit Cards in unsecure packaging, wherein the identifying information is exposed to any third parties who come in contact with the Visa Debit Card prior to selling the cards to unsuspecting consumers.

29. The Greendot funded Visa Debit Cards are left in various locations inside

- 6 -

WalMart stores throughout California, which are easily accessible to any member of the public who enters their stores.  The Greendot funded Visa Debit Cards are packaged in a manner in which any individual can merely pull off a plastic tab off of the back of the card and easily read the Greendot funded Visa Debit Cards' number, as well as merely pull back the cardboard packaging to see all information that a criminal could need to run fraudulent charges on said cards once they are activated.   A true and correct copy of an image of the way in which said Greendot funded Visa Debit Cards are packaged, taken on or about October 1, 2019, is below:



30. Although Greendot includes a warning on the tab itself stating, "Cashier: **REMOVE tab to SCAN barcode STOP If tab is tampered with, DO NOT SELL,**" said instructions are only visible and put the Cashiers on notice that

the Greendot funded Visa Debit Cards have not been tampered with – only if said Card's packaging had in fact not been tampered with.   Greendot's warning is on the actual tab that can easily be removed by the potential criminal scammers due to the faulty packaging as well as Walmart's choice to leave the cards in a location within their store where the general public can access the cards and remove the tabs.

31.  The other warning on right side of the packaging to Cashiers, "If tab is removed or tampered with **Do Not Sell,**" is easily, and frequently, overlooked by cashiers and reasonable consumers alike.  Further, said tab can be replaced back by individuals who removed said tab and took the information.

32.  The end result of their negligent packaging and unfair business practice is that a Greendot funded Visa Debit Card that's packaging has been tampered with and therefore said Card's information is exposed to fraud resembles a Greendot funded Visa Debit Card that does not appear to be tampered with by the potential customer and/or the Walmart's cashiers.  A true and correct copy of an image of the way in which a Greendot funded Visa Debit Card appears after the packaging had been tampered with can be seen below:



33.   Further, on information and belief, Walmart's unsecure packaging allows third parties to also easily steal the Visa Debit Card's PIN and identifying information, while replacing the tape covering the PIN with a virtually indistinguishable replacement, making the Visa Debit Card appear to any bona-fide good faith purchaser as if it were an untampered Greendot Visa Debit Card.

34.   On information and belief, virtually *all other* pre-paid debit card manufacturers have moved to securing the pin and identifying information from potential scammers by wrapping the cards in secured hard plastic packaging, wherein the Visa Debit Card is wholly contained within a non-transparent package such that a third party has no access to the PIN or other identifying information.

35.   On information and belief, Defendants implicitly represent to purchasers that their gift cards offered for sale are not tampered with or otherwise compromised.

36.   On information and belief, Defendants collectively engage in a pattern and practice of selling gift cards it knows, or should know, have been tampered with and/or compromised.

37.   On information and belief, Defendants are aware that their Visa Debit Cards are frequently compromised.  However, the Cardmember Agreement states that Plaintiff's liability in the event of a stolen card or unauthorized transaction would be limited to no more than $50.00.  However, the Cardmember Agreement goes on to state that should a victim of fraud due to Greendot's faulty and compromised packaging along with Walmart's lack of securely placing the Greendot funded Visa Debit Cards in a secure location, said victim/customer would still lose $500.00 if they failed to discovery the fraud immediately and thereby a mere two (2) business days to contact the Defendants and report said fraud.  A true and correct copy of a highlighted excerpt of the Cardmember Agreement's paragraph 16 is below:

**16. Lost or Stolen Card and Unauthorized Transfers**

a) _Lost or Stolen Cards_.  If you have registered your Card and you believe your registered Card has been lost or stolen, or that someone has transferred or may transfer money from your registered Card without your permission, contact us AT ONCE.  Reporting your Card lost or stolen online at www.walmartgift.com or calling us at (866) 633-9096 is the best way of keeping your possible losses down.  You could lose all the money on your Card.  If you tell us within two (2) business days after you learn of the loss or theft of your registered Card, you can lose no more than $50.00 if someone used your registered Card without your permission.  If you do NOT notify us within two (2) business days after you learn of the loss or theft of your registered Card and we can prove that we could have stopped someone from using your registered Card without your permission if you had told us, you could lose as much as $500.00.  Under Visa U.S.A. Inc. Operating Regulations, you will not be liable for the amounts stated above unless we determine that you were grossly negligent or fraudulent in the handling of your Card. This reduced liability does not apply to PIN transactions not processed by Visa.

b) _Unauthorized Transactions_.  Also, if your on-line or paper transaction history shows transfers that you did not make, including those made by your registered Card, PIN or other means, tell us at once. If you do not tell us within sixty (60) days after: (i) you electronically access your Card information at www.walmartgift.com; or (ii) we provide you with a written history of your Card transactions, you may not get back any Card value you lost after the sixty (60) days if we can prove that we could have stopped someone from taking the Card value if you had told us in time. If a good reason (such as a long trip or hospital stay) kept you from telling us, we will extend the time periods.

38.  On information and belief, Defendants advertise to consumers through print, online media, and store displays that the Walmart Visa Debit Cards protect consumers from loss or theft.

39.  The reverse side of the Visa Debit Card packaging expressly asserts that the purchaser will be "protected" from loss or theft.

40.  On information and belief, Defendants are well aware of this ongoing and rampant scam being committed by third parties regarding these Greendot Walmart pre-paid Visa Credit Cards, as it is prevalent among the Walmart Greendot issued Visa Debit Cards offered for sale by Defendants.

41. The problem is so rampant, that the ongoing theft of the identifying information regarding these cards has even made national news on NBC Nightly News:



42. Further, this unsecured packaging has been a rampant problem affecting many victims similar to Plaintiff for the last 5+ years, as is evidenced by an online article discussing this same situation, with multiple online comments from the public explaining that they were victimized in a similar fashion as Plaintiff was here.  The web address of the online article dated December 19, 2017 depicting the same scenario that has occurred in this situation along with many similar victims comments below is as follows:

https://www.terrycaliendo.com/walmart-gift-card-fraud-scam-walmart-doesnt-seem-care-fix-store-9115-rd/

43. On information and belief, the fraudulent practice of stealing the Greendot Walmart pre-paid Visa Credit Cards' identifiable information is common and known to Walmart and Greendot.  Further, the Walmart Associates are not properly trained to inspect said gift cards for tampering, and Defendants commonly refuse to replenish the balance on said gift cards or refund the money to harmed consumers like Plaintiff.

44. On information and belief, despite being keenly aware of this widespread problem regarding the Greendot Walmart pre-paid Visa Credit Cards' defective packaging, Defendants refuse to more securely package said Cards.

45. On information and belief, almost all other companies who package and sell similar pre-paid gift cards such as Visa, Mastercard, American Express, at Walmart, said similar gift cards are packaged inside a wrapped packaging that would have to be ripped opened and the card would have to be taken out in order to steal the secret data from it. Despite this being the common business practice to avoid said aforementioned injuries to Plaintiff, Defendants have refused to modify their packaging and instead allow for any third party to easily access the Greendot Walmart pre-paid Visa Credit Cards' identifying information undetected by leaving the information behind a simple tab that can either be placed back on the packaging and/or still seems untampered with even after the tab is removed.

46. On information and belief, despite this widespread problem, Defendants continue to sell the Visa Debit Cards using unsecure packaging that makes the cards an easy target for third party actors, while Defendants simultaneously advertise the Visa Debit Cards as having loss and theft protection, which Defendants then do not honor, and/or cap their liability per their Cardholder Agreement, and/or merely deny refunding any of the stolen funds – as they did with Plaintiff.

**CLASS ACTION ALLEGATIONS**

47. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 47, inclusive, as though fully set forth.

48. Plaintiff and the members of the Class have all suffered an injury in fact as a result of the Defendant's unlawful conduct.

49. The "Class Period" means 48 months prior to the filing of the Complaint in this action.

50. Plaintiff brings this lawsuit on behalf of himself and other similarly situated individuals under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedures. Subject to additional information obtained through further investigation and/or discovery, the proposed class ("Class") consists of:

> All persons in the State of California who purchased Greendot Visa Prepaid Credit Card(s) from Defendant Walmart ("Card(s)") with balances in excess of $50.00.

51. *Ascertainability*. The members of the Class are readily ascertainable from Defendant's records of loans issued in the 48 months preceding this filing, and the specific terms and parties identified therein.

52. *Numerosity*. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class consists of tens of thousands of members, or more.

53. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. All members of the Class have been subject to the same conduct and their claims are based on the widespread dissemination of the unlawful, deceptive, and pernicious conduct by Defendants. The common legal and factual questions include, but are not limited to, the following:

   A.    The nature, scope, and operations of the wrongful practices of Defendants;

   B.    Whether Defendants engaged in a course of unfair, unlawful, fraudulent, and/or pernicious conduct in its packaging, marketing, and sale of the Greendot Walmart Pre-Paid Visa Credit Cards;

   C.    Whether Defendants knew or should have known that its business

practices were unfair, and/or unlawful;

    D.    Whether Defendants owed a duty of care to Plaintiff and the Class;

    E.    Whether Defendant's conduct with regards to selling the Pre-Paid Visa Credit Cards issued by Greendot violated California law and/or public policy.

    F.    Whether Defendant harmed Plaintiff and the Class; and

    G.    Whether Defendants were unjustly enriched by its unlawful and unfair business practices.

54. ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Class, was induced by Defendants purchase the Greendot Card which were packaged and marketed using unfair, unlawful, and objectively oppressive means.

55. ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in consumer protection law, including class actions.  Plaintiff has no adverse or antagonistic interests to those of the Class, and will fairly and adequately protect the interests of the Class.  Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class

56. ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the courts and the issues raised by this action. The damages or other financial detriment suffered by individual Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is

relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them.  Even if the members of the proposed Class could afford such litigation, the Court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device used in conjunction with the Public Injunctive Relief sought as a Private Attorney General Action pursuant to Cal. Business and Professions Code § 17204 presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.  Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

57. Unless the Class is certified, Defendants will continue their unlawful, unfair, and predatory practices as described herein.  If the Class is certified, the harms to the public and the Class can be easily rectified.

58. Furthermore, Defendant has acted or refused to act on grounds that are generally applicable to the Class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

## I.

## FIRST CAUSE OF ACTION

### Violations of the California Consumer Legal Remedies Act

(Cal. Civ. C. § 1750 *et. seq.*)

[As to all Defendants]

59. Plaintiff incorporates by reference and realleges Paragraphs 1-58 above as though fully stated herein.

60. Defendant Walmart is a "person" as defined in Cal. Civ. C. § 1761(c).

61. Defendant Greendot is a "person" as defined in Cal. Civ. C. § 1761(c).

62. Plaintiff is a "consumer" as defined in Cal. Civ. C. § 1761(d).

63. The Visa Debit Cards constitute "goods" bought for use primarily for personal, family or household purposes pursuant to Cal. Civ. C. § 1761(a).

64. Plaintiff saw advertisements for the Walmart Visa Debit Cards in print and online media.  Plaintiff additionally viewed in-store display advertisements for the Walmart Visa Debit Cards.

65. In said advertisements, Defendant Walmart represented that purchasers of the Walmart Visa Debit Card would not be liable for any loss or theft exceeding $50.00.

66. Defendant Walmart further implied that the Walmart Visa Debit Cards were a safe purchase, and that they were not compromised.

67. Defendants both represented to Plaintiff and other similarly situated California Consumers that the Walmart Visa Debit Cards were secure, and that pursuant to verbiage on the package, and in the card member agreement, that a purchaser's liability would not exceed $50.00 in the event of loss, theft, or unauthorized charges.

68. Plaintiff relied on these false statements in the advertisements, and in the express representations made by Defendants regarding the Walmart Visa Debit cards in deciding to purchase the two (2) Visa Debit Cards described herein.

69. The California Consumer Legal Remedies Act, Cal. Civ. C. § 1770(a) ("CLRA") prohibits the following unfair methods of competition and deceptive acts and practices as follows:

> § 1770(a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…; § 1770(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are

of another; § 1770(a)(9) Advertising goods or services with

intent not to sell them as advertised;

70. By misrepresenting the safety and security of its Visa Debit Cards, and further misrepresenting that purchasers such as Plaintiff would not have liability above $50.00 in the event of loss, theft, or unauthorized use, Defendants violated the CLRA.

71. In the alternative, by knowing that third party theft was common and widespread, and not disclosing to purchasers such as Plaintiff and other similarly situated consumers that there was a significant risk of loss by purchasing the Visa Debit Cards, Defendants violated the CLRA.

72. Plaintiff suffered actual monetary financial damages as a direct and proximate result of Defendants' violations of the CLRA, as he was induced to purchase two (2) $500 Visa Debit Cards that he otherwise would not have purchased from Defendants, and instead would have purchased the Cards from the multitude of other Debit Card Resellers who securely package their Visa Debit Cards and/or resellers and would honor their promises to Plaintiff of not having significant liability for loss, theft, or unauthorized use.

73. Plaintiff was further damaged by Defendants' violations of the CLRA as they caused Plaintiff to lose $1,000.00 by negligently or intentionally failing to honor the written statements on the back of the Visa Debit Card package, and the guarantees contained in the Cardmember Agreement.

74. Prior to filing this Complaint, Plaintiff served on Green Dot, via certified mail, received by Green Dot on or about August 26, 2019, a CLRA notice letter which complied with Cal. Civ. C. § 1782(a), that advised Defendants that they were in violation of the CLRA and demanded that they cease and desist from such violations, and make full restitution to Plaintiff ("CLRA Letter"). Green Dot in response refused to comply with Plaintiff's demands and fix their defective packaging of the Greendot Walmart pre-paid Visa Credit Cards.

75. Prior to filing this Complaint, Plaintiff served the CLRA Letter on Walmart, via certified mail, received by Walmart's agent for service on or about August 26, 2019, and also received on or about September 4, 2019 by the Walmart store at which Plaintiff purchased Plaintiff's Greendot Cards. To date, Walmart has not responded to that demand letter or complied with Plaintiff's demands and fix their defective packaging of the Greendot Walmart pre-paid Visa Credit Cards.

76. On information and belief, Defendants' violations of the CLRA set forth herein were done with awareness of the fact that the conduct alleged was wrongful under California law and was motivated solely for Defendants' self-interest, monetary gain, and increased profits.

77. Plaintiff further alleges that Defendants committed these acts knowing, or reasonably should have known, that the harm was likely to result to Plaintiff and Defendants engaged in such unfair and deceptive conduct notwithstanding such knowledge.

78. Plaintiff suffered an "injury in fact," because Plaintiff's money was lost, as direct and proximate result of Defendants' conduct alleged herein.

79. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff is entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

80. Filed concurrently with this Complaint is a signed affidavit from Plaintiff, pursuant to Cal. Civ. Code § 1780(d).

81. Plaintiffs reserve the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

82. Plaintiffs seek public injunctive relief pursuant to Cal. Civ. C. § 1780 *et. seq.* ("CLRA") to benefit the general public directly by bringing an end to Defendants' unlawful business practices which threaten future injury to the general public.

## II.

## SECOND CAUSE OF ACTION

## Violations of the California Unfair Competition Law

(Cal. Bus. & Prof. C. § 17200 *et. seq.*)

[As to all Defendants]

83. Plaintiff incorporates by reference and realleges Paragraphs 1-79 above as though fully stated herein.

84. Cal Bus. & Prof. C. § 17200 defines unfair competition as including "any unlawful, unfair or fraudulent business act or practices and unfair, deceptive, untrue or misleading advertising…"

85. Plaintiff and Defendants are each "persons" as that term is defined by Cal. Bus. & Prof. C. § 17201.

86. Cal. Bus.  & Prof. C. § 17204, a provision of the Unfair Competition Law (B & P C §§  17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein, but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private Plaintiff who has suffered a financial injury may sue to obtain relief for others.

87. An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009); see also, *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 789 (2010) ("[i]f a party has standing under" the UCL, "it may seek injunctive relief").

88. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."  The definitions in § 17200 are drafted in the

disjunctive, meaning that each of these "wrongs" operates independently from the others.

## A. "Unlawful" Prong

89. As described fully above, Defendants violated the CLRA.

90. As described fully above, by misrepresenting the quality, trustworthiness, and specifically Plaintiff's exposure to liability, the Defendants violated Cal. Civ. C. § 1750 *et. seq.*

91. As described fully above, by expressly representing to Plaintiff that the Visa Debit Cards offered for sale by Walmart were safe, secure, uncompromised, and that Defendant Walmart would cover all liability exposure for Plaintiff above $50.00, Defendants violated the CLRA.

92. Defendant violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et. seq.*, which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

93. As expressed above, by stating in its packaging and cardmember agreement that Plaintiff would have no liability beyond $50.00, and then systematically not honoring that promise, Defendants violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et. seq.*, which provides a cause of action for an "unlawful" business acts or practices perpetrated on consumers.

94. As expressed above, Defendants violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq., which provides a cause of action for an "unlawful" business acts or practices perpetrated on consumers.

95. Defendants had other reasonably available alternatives to further their legitimate business interests, other than the conduct described herein, such as securely package their Visa Debit Cards (as almost all other prepaid debit card providers have done), and/or honor their liability limit contained in the packaging and cardmember agreement.

96. Upon information and belief, Plaintiff alleges that Defendants have engaged in and continue to engage in, an ongoing business practice predicated on saving money by not packaging their debit cards in secure packaging, as has become the industry standard, and as a proximate and foreseeable result, exposes consumers such as Plaintiff to the type of easily preventable losses suffered by Plaintiff.

97. Upon information and belief, Plaintiff alleges that Defendants have engaged in and continue to engage in, an ongoing business practice predicated on convincing consumers such as Plaintiff to purchase Defendants' Visa Debit Cards based upon the false written promise that if Plaintiff purchased Defendants' Visa Debit Cars, that Plaintiff and other consumers' liability for loss, theft, or other unauthorized use would not exceed $50.00, when in fact Defendants' actual business practice is to deny any such claims, causing Plaintiff and similar consumers to bear the losses caused by Defendants' business practices.

98. This pattern of unlawful conduct is ongoing and continues to this date, and thereby affects the general public at large.

99. Plaintiff suffered actual monetary financial injury in that Plaintiff suffered $1,000.00 in monetary loss, and/or would have purchased the Visa Debit Cards from another provider who used secure packaging and/or honored its written promises to limit Plaintiff's liability.

100.   Plaintiff reserves the right to allege further conduct that constitutes other unlawful business acts or practices, as such conduct is ongoing and continues to this date.

101.   Plaintiff seeks public injunctive relief, acting in the capacity of a Private Attorney General to benefit the general public directly by bringing an end to Defendants' unlawful business practices described herein which threaten future

injury to the general public pursuant to California Business and Professions Code ("Cal. B.P. C. §) 17204.

### B. "Unfair" Prong

102.   Defendants' deceptive policies and practices as set forth herein were likely to, and did, deceive Plaintiff.  Thus, Defendants' representations constitute an "unfair" business act or practice under § 17200 in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

103.   Defendants' unlawful, unfair, deceptive, and fraudulent business practices present a continuing threat to Plaintiff and others in that Defendants will continue utilizing similar policies and practices.

104.   Without limitation, the business practices describe herein are "unfair" and shock the conscience because they offend established public policy, violate California statutory protections, and are objectively immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that Defendants' conduct caused severe financial injury to Plaintiff.

105.   At a date presently unknown to Plaintiff, but less than four years prior to the filing of this action, and as set forth above, Defendants committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, et seq., as described herein.

106.   Defendants committed false and misleading acts as to Plaintiff including but not limited to (1) misrepresenting that Defendants' Visa Debit Cards were safe, secure, and uncompromised, and (2) that Defendants would cover all liability exposure for Plaintiff above $50.00.

107.   Cal. Bus. & Prof. C. § 17203 provides that Plaintiff is entitled to an order enjoining Defendants from engaging in acts or practices that violate Cal. Bus. & Prof. C. § 17200, as well as providing for equitable monetary relief so as to

preclude the retention of all unlawful and deceptive moneys received by Defendants, or so as to restore any and all monies wrongfully obtained by Defendants to Plaintiff. Plaintiff has lost money and suffered injury in fact as a result of Defendants' unfair and illegal conduct.

108.   Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date, and is a source of considerable revenue to Defendants.

109.   Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendants' unfair business practices described herein, which threaten future injury to the general public. Specifically, an injunction requiring Defendants to (1) securely package their Visa Debit Cards in a manner similar to what has become the de facto industry standard, and (2) either cease representing to potential customers in their advertising, packaging, and cardmember agreements that consumers' liability for loss, theft, or unauthorized use of the Visa Debit Cards will be capped at $50.00, *or* actually honor those written promises and warranties.

110.   The injunctive orders requested in paragraphs 92 and 100 would benefit the general public at large because the public could then not be lured into purchasing Visa Debit Cards from Defendants that were insecurely packaged and unnecessarily exposed consumers to the risk of loss, and would further prevent Defendants' from luring the general public from purchasing Visa Debit Cards from Defendants believing that Defendants would insure that the purchasers' risk would not exceed $50.00.

111.   Therefore, Plaintiff seeks public injunctive relief, acting in the capacity of a Private Attorney General to benefit the general public directly by bringing an end to Defendants' unlawful business practices described herein which threaten future injury to the general public pursuant to California Business and Professions Code ("Cal. B.P. C. §) 17204.

### C. "Unfair, Deceptive, Untrue or Misleading Advertising" Prong

112.   Defendants' deceptive and untrue advertising intended to, and did, misrepresent to Plaintiff that (1) Defendants' Visa Debit Cards were safe, secure, and uncompromised, and (2) that Defendants would cover all liability exposure for Plaintiff above $50.00.

113.   Plaintiff viewed Defendants' false and misleading print, online, and in-store advertisements, and was induced to then purchase Defendants' Visa Debit Cards.

114.   By disseminating the false, misleading, and deceptive advertisements for their Visa Debit Cards, Defendants intended said representations to induce consumers like Plaintiff to purchase Visa Debit Cards with a significantly higher risk of monetary loss than similarly priced competitors' products.

115.   Plaintiff did in fact, rely on the false and misleading advertisements by Defendants when determining whether to purchase the Visa Debit Cards from Defendants.

116.   As a result of Defendants' unfair, deceptive, and misleading advertisements, Plaintiff was harmed as he suffered $1,000.00 in actual financial monetary out of pocket losses that he would not have suffered if Defendants' advertisements and written representations were not unfair, deceptive and misleading.

117.   Therefore, Paintiff seeks public injunctive relief, acting in the capacity of a Private Attorney General to benefit the general public directly by bringing an end to Defendants' unlawful business practices described herein which threaten future injury to the general public pursuant to California Business and Professions Code ("Cal. B.P. C. §) 17204.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

- That this action be certified as a Class Action, Plaintiff be appointed as the representatives of the Class, and Plaintiff's attorneys be appointed Class counsel;

- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutory claims asserted herein;

- Public injunctive relief through the role as a Private Attorney General, pursuant to Cal. Bus. & Prof. Code §§ 17204, permanently and immediately prohibiting Defendants Walmart and Greendot from engaging in the unlawful conduct alleged herein, including but not limited to the inclusion of their false advertising regarding the security of their Greendot Cards, the $50.00 warrant, and/or using unsecured packaging of said pre-paid visa cards;

- A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) cease packaging the pre-paid visa credit cards for Walmart issued by Greendot in unsecured packaging; (ii) and institute corrective advertising providing written notice to the public of the unsecured nature of the packaging and the failure of Greendot and/or Walmart to reimburse its potential consumers for theft and/or loss resulting from their unsecured packaging in excess of $50.00;

- An order requiring imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and, also, to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;
- Actual damages, injunctive relief, restitution, and punitive damages pursuant to California Code of Civil Procedure § 1780;
- Prejudgment and post judgment interest;
- Exemplary and/or punitive damages for intentional misrepresentations pursuant to, *inter alia*, Cal. Civ. Code § 3294;
- Costs of this suit;
- Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5, Cal. Civ. Code § 1780, the UCL, and the common fund doctrine; and,
- Awarding any and all other relief that this Court deems necessary or appropriate.

Dated: October 11th, 2019                    **BLC LAW CENTER, APC**


By:   /s/ Ahren A. Tiller
Ahren A. Tiller, Esq.
Attorneys for Plaintiff
GULLIERMO ESPINOZA,
Individually and On Behalf of
All Others Similarly Situated

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to the Seventh Amendment to the Constitution of the United States

3 of America, Plaintiff is entitled to, and demands, a trial by jury on all issues triable

4 by jury.

5

6

7 Dated: October 11th, 2019                                **BLC LAW CENTER, APC**

8

9                                                                       By:    /s/ Ahren A. Tiller_____
10                                                                              Ahren A. Tiller, Esq.
                                                                              Attorneys for Plaintiff
11                                                                              GULLIERMO ESPINOZA,
                                                                              Individually and On Behalf of
12                                                                              All Others Similarly Situated

13 **Additional Counsel for Plaintiff**

14

15 **KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
16 ak@kazlg.com
Nicholas R. Barthel, Esq. (SBN: 319105)
17 nicholas@kazlg.com
245 Fischer Avenue, Ste. D1
18 Costa Mesa, California 92626
Telephone: (800) 400-6808
19 Facsimile: (800) 520-5523
20

21

22 **KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
23 jason@kazlg.com
321 N Mall Drive, Suite R108
24 St. George, Utah 84790
Telephone: (800) 400-6808
25 Facsimile: (800) 520-5523

26

27

28