1  Ahren A. Tiller, Esq. [SBN: 250608]
2  BLC Law Center, APC
3  1230 Columbia St., Ste 1100
   San Diego, CA 92101
4  Phone (619) 894-8831
5  Facsimile: (866) 444-7026
   Email: ahren.tiller@blc-sd.com
6
7  [Additional Counsel on Signature Page]
8  Attorneys for Plaintiff,
9  GULLIERMO ESPINOZA

10         **UNITED STATES DISTRICT COURT**

11        **SOUTHERN DISTRICT OF CALIFORNIA**

12

13

| | |
|---|---|
| 14  GUILLERMO ESPINOZA, Individually and On Behalf of All Others Similarly Situated , | Case No.: 3:19-cv-01972-MMA-RBB |
| 15             Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER OR, IN THE ALTERNATIVE, COMPEL ARBITRATION** |
| 16      vs. | |
| 17  WALMART INC.; GREEN DOT CORPORATION; GREEN DOT BANK DBA BONNEVILLE BANK; and DOES 1-50; inclusive, | |
| 18 | |
| 19 | |
| 20 | **DATE:**  February 3, 2020 |
| 21             Defendants. | **TIME:**   2:30 p.m. |
| 22 | **DEPT.:**  3D |
| 23 | [Declaration of Guillermo Espinoza filed concurrently] |
| 24 | |

25

26

27

28

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................... iii

**I.    INTRODUCTION** ...........................................................................1

**II.   DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF UTAH SHOULD BE DENIED**.................................................2

    **A. There Was No Mutual Assent to the Agreement** ........................... 2

    **B. Choice of Law** ........................................................... 6

    **C. Forum Selection Clause** ...................................................8

**III.  DEFENDANTS' MOTION TO COMPEL ARBITRATION SHOULD BE DENIED** ............................................................ 11

    **A. Arbitration Clause Is Not Enforceable Due to Coercion** ............. 11

    **B. Contrary to Defendants' Assertions, the Arbitration Agreement's Waiver Provision Is Unenforceable** .........................13

    **C. The Arbitration Agreement is Not Valid, it is Not Enforceable, Nor Does it Encompass Plaintiff's Claims** ......................................15

    **D. Plaintiff is Not Equitably Estopped from Refusing to Arbitrate Disputes against Defendants Walmart and Green Dot Corp.** ......16

    **E. Under *Blair* and *McGill*, the Arbitration Agreement is Unenforceable as to Plaintiff's Claims for Public Injunctive Relief** ............................................................................18

        1. The Arbitration Agreement Prohibits Public Injunctive Relief, and is Unenforceable ...............................................18

        2. Plaintiff's Complaint Seeks Public Injunctive Relief ..........19

        3. Plaintiff Has Standing to Assert His Claims ........................21

        4. The FAA Does Not Pre-Empt *McGill* ...................................22

**F. Plaintiff Requests the Court Deny Defendants' Motion in its Entirety, Making the Issue of Staying vs. Dismissal Moot** ............22

**IV.    CONCLUSION** ............................................................. 22

Opposition to Motion to Transfer or, in the Alternative, Compel Arbitration

# TABLE OF AUTHORITIES
## CASES

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*,
  46 Cal. 4th 993 (2009) ....................................................................21

*AT&T Techs., Inc. v. Communs. Workers of Am.*,
  475 U.S. 643 (1986) .........................................................................3

*Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*,
  147 Wn. App. 758,
  198 P.3d 514 (Wash. Ct. App. 2008) ...............................................8

*Bhari Info. Tech. Sys. Pvt, Ltd. v. Allied Boston Bank, Inc.*,
  No. C 05-01223 SI,
  2005 U.S. Dist. LEXIS 40094 (N.D.Cal. Dec. 19, 2005) ................12

*Binder v. Aetna Life Ins. Co.*,
  75 Cal. App. 4th 832,
  89 Cal. Rptr. 2d 540 (1999) ..........................................................2, 6

*Blair v. Rent-A-Center, Inc.*,
  928 F.3d 819 (9th Cir. 2019) ...............................................10, 19, 22

*Bunnell v. Bills*,
  13 Utah 2d 83,
  368 P.2d 597 (1961).........................................................................6

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) .........................................................................2

*Circuit City Stores, Inc. v. Adams*,
  279 F.3d 889 (9th Cir. 2002) ...........................................................3

*Circuit City Stores, Inc. v. Mantor*,
  335 F.3d 1101 (9th Cir. 2003) .........................................................6

*Commercial Factors Corp. v. Kurtzman Bros.*,
  131 Cal.App.2d 133 (1955) .............................................................3

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) ..........................................................................20

*Devries v. Experian Info. Sols., Inc.*,
   No. 16-cv-02953-WHO,
   2017 U.S. Dist. LEXIS 84255 (N.D. Cal. June 1, 2017) ...................................14

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996) ............................................................................................3

*Douglas v. United States Dist. Court Cent. Dist. Cal.*,
   495 F.3d 1062 (9th Cir. 2007) ............................................................................6

*Eiss v. USAA Fed. Sav. Bank*,
   No. 19-cv-00108-EMC,
   2019 US Dist. LEXIS 144026 (N.D. Cal. Aug 23, 2019) .................................22

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..........................................................................................12

*Glover v. Comenity Capital Bank*,
   No. 3:16-cv-01785-BEN-BLM,
   2017 U.S. Dist. LEXIS 68907 (S.D. Cal. Apr. 24, 2017) .................................23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ........................................................................................12

*Kilgore v. KeyBank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ..........................................................................20

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ..............................................................................4

*Lawrence v. Walzer & Gabrielson*,
   207 Cal. App. 3d 1501 (1989) ..........................................................................12

*Lee v. Postmates Inc.*,
   No. 18-cv-03421-JCS,
   2018 U.S. Dist. LEXIS 176965 (N.D. Cal. Oct. 15, 2018) ..................13, 14, 15

Opposition to Motion to Transfer or, in the Alternative, Compel Arbitration

*Lefevre v. Five Star Quality Care, Inc.*,
705 F.App'x 622 (9th Cir. 2017) ...........................................................7

*Lloyd v. Navy Fed. Credit Union*,
No. 17-cv-1280-BAS-RBB,
2018 U.S. Dist. LEXIS 62404,
2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) .......................................7

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ...............................................................*passim*

*Meyer v. Benko*,
55 Cal. App. 3d 937,
127 Cal. Rptr. 846 (1976) ......................................................................3

*Morse v. Servicemaster Global Holdings, Inc.*,
No. C 10-00628 SI,
2012 U.S. Dist. LEXIS 144691 (N.D.Cal. Oct. 4, 2012) ....................8

*Northern P. R. Co. v. Twohy Bros. Co.*,
95 F.2d 220 (9th Cir. 1938) ...................................................................9

*O'Brien v. Shearson Hayden Stone, Inc.*,
90 Wn.2d 680,
586 P.2d 830 (Wash. 1978) ...................................................................7

*Oestreicher v. Alienware Corp.*,
502 F. Supp. 2d 1061 (N.D. Cal. 2007) ..............................................7

*Rahmany v. T-Mobile USA Inc.*,
717 F.App'x 752 (9th Cir. 2018) ...................................................16, 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ................................................................................12

*Rosenthal v. Great W. Fin. Sec. Corp.*,
14 Cal. 4th 394, 58 Cal. Rptr. 2d 875 (1996) .....................................3

*Ruiz v. Affinity Logistics Corp.*,
667 F.3d 1318 (9th Cir. 2012) ..............................................................6

Opposition to Motion to Transfer or, in the Alternative, Compel Arbitration

*Rutter v. BX of Tri-Cities, Inc.*,
  60 Wn. App. 743,
  806 P.2d 1266 (Wash. Ct. App. 1991) ...............................................7

*Saravia v. Dynamex, Inc.*,
  310 F.R.D. 412 (N.D. Cal. 2015) ......................................................6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ........................................................................11

*Ticknor v. Choice Hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001) ...........................................................7

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960) ..........................................................................3

*Van Slyke v. Capital One Bank*,
  503 F. Supp. 2d 1353 (N.D. Cal. 2007) ............................................7

*Victoria v. Superior Court*,
  40 Cal. 3d 734 (1985) .....................................................................12

*Volt Info. Scis. v. Bd. of Trs.*,
  489 U.S. 468 (1989) ........................................................................11

## STATUTES

9 U.S.C. § 2 .......................................................................................12

9 U.S.C. § 4 .......................................................................................22

Cal. Bus. & Prof. Code § 17203 ................................................19, 20

Cal. Bus. & Prof. Code § 17204 ......................................................22

Consumer Legal Remedies Act, Cal. Civ. C. § 1780, *et seq.*..........*passim*

California's Unfair Competition Law, Cal. Bus. & Prof. C. § 17200, *et seq.*...*passim*

## OTHER

"In connection with." COBUILD Advanced English Dictionary.
  https://www.collinsdictionary.com/us/dictionary/english/in-connection-with
  (January 16, 2020) .............................................................................8

"purchase." Merriam-Webster.com.
   https://www.merriam-webster.com/dictionary/purchase (January 16, 2020) ......8

"use." Merriam-Webster.com.
   https://www.merriam-webster.com/dictionary/use (January 16, 2020) ...............8

## I.      INTRODUCTION

Plaintiff Guillermo Espinoza ("Mr. Espinoza" or "Plaintiff") opposes the motion by Defendants Walmart, Inc., Green Dot Corporation, and Green Dot Bank d/b/a Bonneville Bank (collective referred to as "Defendants") to transfer this action to the District of Utah or, in the alternative, compel arbitration of Plaintiff's statutory claims under the Consumer Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL") concerning the sale and advertising by Defendants of unsecured and compromised pre-paid Greendot payment cards sold at Walmart stores ("Motion").

Plaintiff's two causes of action are not governed by the Cardmember Agreement because the action arose prior to any reasonable opportunity for Plaintiff to review the Cardmember Agreement.  Therefore, there is a lack of mutual assent to the Cardmember Agreement purporting to contain a choice of law provision, forum selection clause, arbitration delegation clause and arbitration clause.

Even assuming *arguendo*, that there was mutual assent to the Cardmember Agreement, the forum selection clause does not apply based on its express terms and it is also contrary to California public policy, thus unconscionable. Moreover, even if there was mutual assent to the arbitration delegation clause, it is unenforceable due to coercion, which means this Court should decide the arbitrability question.

In terms of the arbitration clause, there was no mutual assent to arbitrate disputes with Defendants, nor does the clause encompass the claims of Plaintiff. Further, the arbitration clause is unenforceable as it is contrary to the important California public policy against prohibiting claims seeking public injunctive relief in accordance with *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).

Lastly, Plaintiff is not equitably estopped from refusing to arbitrate such claims against the two non-signatories, Defendants Walmart and Green Dot Corp., because Plaintiff's claims for those Defendants' advertising and selling of unsecured and/or compromised payment cards arose independent of the Cardmember

Agreement, and are not intimately connection with any obligations under the Cardmember Agreement.  Therefore, the doctrine of estoppel does not apply to such claims which do not seek to enforce the Cardmember Agreement.

Therefore, the Defendants' Motion should be denied in its entirety.

## II.   DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF UTAH SHOULD BE DENIED

Due to lack of mutual assent to the Cardmember Agreement, the Motion to transfer this action to the District of Utah under the purported forum selection clause should be denied. Even if, *arguendo*, there was mutual assent to such clause with regard to Plaintiff's claims against Green Dot Bank, Defendants have not shown that Green Dot Corp. and Walmart (non-signatories to the Cardmember Agreement) may take advantage of that clause, which means Plaintiffs claims against those two entities should remain in the present District Court. Additionally, the choice of law provision does not apply to the causes of action alleged here, because those causes of action arose independent of the Cardmember Agreement and are not covered by the express terms of that Agreement.  Furthermore, the forum selection clause should not be enforced, because it is contrary to California public policy to protect claims for public injunctive relief pursuant to the California Supreme Court's ruling in *McGill*, Supra.

### A.   There Was No Mutual Assent to the Agreement

The alleged Cardmember Agreement is not signed by Plaintiff, which means that Defendants must show an agreement was implied by conduct. "Mutual assent may be manifested by written or spoken words, or by conduct," *Binder v. Aetna Life Ins. Co*., 75 Cal. App. 4th 832, 850, 89 Cal. Rptr. 2d 540 (1999), and acceptance of contract terms may be implied through action or inaction, see *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991).  However, there is no Agreement that could apply to Plaintiff's cause of action due to a lack of mutual assent.  Plaintiff did not have a reasonable opportunity

to review the terms of the Agreement before Plaintiff suffered the harm caused by the compromised Cards.

"[A]rbitration is a matter of contract." *AT&T Techs., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted). State contract law controls whether the parties have agreed to arbitrate. *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). Defendants, the parties seeking to compel arbitration, have the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413, 58 Cal. Rptr. 2d 875 (1996). That burden has not been met by Defendants.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Under California law, mutual assent is a required element of contract formation. *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850, 89 Cal. Rptr. 2d 540 (1999). Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement. *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43, 127 Cal. Rptr. 846 (1976). When the parties "neither expressly or impliedly, neither directly or indirectly, . . . discuss arbitration or bargain about it . . . they reached no agreement thereon." *Commercial Factors Corp. v. Kurtzman Bros*., 131 Cal.App.2d 133, 136 (1955).

According to the Complaint and the accompanying declaration of Mr. Espinoza, Mr. Espinoza purchased two $500 pre-paid Greendot Cards from a Walmart in San Marcos, California for personal use, yet the funds were stolen from

the compromised Cards before they could be used. (*See* Compl., ¶¶ 10-17, and 28; and the Declaration of Guillermo Espinoza ["Espinoza Decl."], ¶¶ 2-7, filed herewith).  The third-party bad actor did not need to open the packaging to steal the card information and access the funds online, since the funds were unlawfully withdrawn before the Cards were in Plaintiff's possession. (Espinoza Decl., ¶¶ 6-7, and 16.)  The funds were added to the compromised Cards before Plaintiff could even have had a chance to read the paper copy of the Arbitration Agreement which was securely included inside the packaging, which Plaintiff had no ability to review prior to purchasing and opening said cards' packaging. (Espinoza Decl., ¶¶ 3-7, and 14-16).  Plaintiff paid for the Cards at the Walmart after handing over the Cards, in their packaging, to the teller who then returned the purchased Cards to Plaintiff without opening the product packaging. (*Id*. at ¶ 4).

Plaintiff took the Cards home, still in their packaging. *Id*. The funds were unlawfully withdrawn before Plaintiff opened the packaging of the Cards (and thus Plaintiff did not see the "Cardholder Agreement" until well after the subject causes of action arose). (Espinoza Decl., ¶¶ 3-7, and 14-16).  Plaintiff attempted to pay his rent by entering the payment information on the Cards within a minute or less after opening the packaging of the Cards. (*Id*. at ¶ 7).

In *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014), the plaintiff Knutson sued Sirius XM Radio Inc. for unwanted telemarketing calls received while participating in a free satellite radio subscription after purchasing a vehicle. The Ninth Circuit Court of Appeals held that Knutson did not assent to the agreement containing an arbitration clause because he was not aware of its terms, the terms had been provided to Knutson only after activation of a free radio subscription, and there was no clear indication that the offer by Sirius XM Radio was effectively communicated to Knutson.

Similarly, here, Plaintiff was not aware of the Cardmember Agreement's terms before the two causes of action (for the selling and advertising of compromised

payment cards, *see* Compl., ¶¶ 33-37). Indeed, the causes of action arose before Plaintiff could even attempt to read the Cardmember Agreement contained within the packaging of the Cards, as explained above. Defendants' evidence shows that the packaging of the Cards did not alert Plaintiff to any "arbitration" agreement; the packaging merely notes a general "Cardholder Agreement" was contained therein, but says nothing regarding arbitration specifically. (Espinoza Decl., ¶¶ 3, 5, 7, and 15; *see also* Compl., ¶ 29). Thus, Plaintiff had no reason to believe he was bound to arbitrate disputes with any of the Defendants, especially disputes that arose prior to purchasing and opening the product packaging to find a general Cardmember Agreement. *(Id.).* Plaintiff was not aware of the alleged arbitration agreement until he consulted with his legal counsel after the funds were withdrawn from the Cards without Plaintiff's authorization. (*Id.* at ¶ 15).

Defendants may argue that Plaintiff later on visited the website for Walmart (*see* Dkt. No. 11-6) and had an opportunity to review the Cardmember Agreement terms there, but that is irrelevant.[1] Again, the causes of action arose prior to any opportunity for Plaintiff to review the Agreement's terms, whether online or otherwise. Defendants cannot essentially trick Plaintiff into agreeing to arbitrate disputes by refusing to help him remedy the fraud until he visited the website for Walmart and registered the Cards, *after* his funds were stolen. (Compl., ¶ 16).

In other words, Defendants tried to force upon Plaintiff an arbitration agreement once it learned of the fraud complaint by Plaintiff, by telling Plaintiff to register his Cards before they would assist him, in order to allegedly help Plaintiff recover the stolen funds that he badly needed to pay his rent. (*Id.*; Espinoza Decl., ¶¶ 8-13). That is not mutual assent - it is coercion.

---

[1] Defendants have submitted no evidence that Plaintiff visited that webpage prior to purchasing the Cards.

Consequently, there is no binding agreement due to lack of mutual assent, which means there is also no choice of law provision or forum selection clause. It also means there is no delegation clause or arbitration clause binding Plaintiff, particularly when the outside of the product packaging makes no mention of a forum selection clause or arbitration clause.

### B.    Choice of Law

Mutual assent to a contract (including an arbitration agreement) is required in both California and Utah. *See Binder,* 75 Cal. App. 4th at 850, and *Bunnell v. Bills*, 13 Utah 2d 83, 368 P.2d 597, 600 (1961). If the Court does not find a lack of mutual assent to the Agreement, the Court should apply California's substantive law in determining its validity, as the purported Cardmember Agreement was allegedly executed in California. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003).

Plaintiff contends that California law apples here, because Plaintiff purchased the subject Cards in California and Plaintiff was at the time, and is, a resident of the State of California (Espinoza Decl., ¶¶ 1-2; Dkt. No. 1-2, ¶¶ 1 and 2), with California having the greatest connection to the purported Agreement. *See e.g., Ruiz v. Affinity Logistics Corp*., 667 F.3d 1318, 1323-25 (9th Cir. 2012) (overturning district court's enforcement of a Georgia choice of law provision in a wage and hour action by California resident truck drivers against a Georgia based company, because California had the greatest interest in the dispute).

California's interest in Greendot Walmart Cards purchased by California residents in California is materially greater than Utah's, where the only relationship to said state is the fact that Green Dot Bank is located there. *See Saravia v. Dynamex, Inc*., 310 F.R.D. 412, 419 (N.D. Cal. 2015) ("California has a materially greater interest than Texas in adjudicating this dispute inasmuch as plaintiff is located in California, and the agreements at issue were executed and performed in California

while Texas's only interest in the dispute arises out of the fact that one of the defendants is headquartered there.")

Many courts have invalidated choice-of-law clauses in consumer contracts that select the law of the state of the corporate headquarters over the law of the consumer's residence.  *See e.g.*, *Douglas v. United States Dist. Court Cent. Dist. Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007); *O'Brien v. Shearson Hayden Stone, Inc.*, 90 Wn.2d 680, 586 P.2d 830, 833-34 (Wash. 1978) (applying, in a class action, Washington law solely to Washington residents); *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1069 (N.D. Cal. 2007) (finding that California has a "materially greater interest" in protecting California consumers); *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1361-62 (N.D. Cal. 2007) (same); *see also, Rutter v. BX of Tri-Cities, Inc.*, 60 Wn. App. 743, 806 P.2d 1266, 1268 (Wash. Ct. App. 1991) (applying Washington franchise protection act to Washington franchise, invalidating California choice-of-law clause); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937-38 (9th Cir. 2001) (applying Montana law to Montana franchise, invalidating Maryland choice-of-law clause.)

Lastly, California has a strong "interest in protecting its consumers through its chosen mechanisms," *see Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 U.S. Dist. LEXIS 62404, 2018 WL 1757609, at *6 (S.D. Cal. Apr. 12, 2018), and "California's own anti-deception statutes take priority, at least in a California forum," when it comes to out-of-state banks and their interactions with California consumers, *see Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1361 (N.D. Cal. 2007).  The Ninth Circuit has previously stated that California's ban on the waiver of public injunctive relief creates a materially greater interest over another state that does not have such a protection. *Lefevre v. Five Star Quality Care, Inc.*, 705 F.App'x 622, 622-623 (9th Cir. 2017) (Because California "does not recognize contractual waivers of PAGA claims, [it] has a materially greater interest

in applying its law to an employment contract involving work performed in California than does Maryland …").

Therefore, California law should be applied to this dispute.

## C.    Forum Selection Clause

The Forum Selection Clause ("FSC") does not apply to Plaintiff's claims for violation of two consumer rights statutes, including the UCL and CLRA, as the claims under those causes of action arose prior to any "use" by Plaintiff of the Cards. *See* Dkt. No. 11-4; *see also*, Defs Motion, 3:19-24.  Importantly, the FSC does not use the word "purchase," but rather the word "use."  The word "use" means to put into action or service. *See* https://www.merriam-webster.com/dictionary/use.  To "purchase" means to obtain by paying money or its equivalent. https://www.merriam-webster.com/dictionary/purchase.  And to "aris[e] out of" (*see* Def.'s Motion, 3:19-24) means "'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" *Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 198 P.3d 514, 521 (Wash. Ct. App. 2008).

Because the statutory claims of Plaintiff arose prior to any use of the Cards, the claims do not arise out of use of the Cards.  Indeed, Plaintiff never actually used the Cards, because the funds that were added to them at the Walmart store were fraudulently withdrawn shortly after the funds were added - *before* Plaintiff even purchased, let alone had access to read the Cardmember Agreement. (Espinoza Decl., ¶¶ 3-7, and 14-15).  Moreover, in *Morse v. Servicemaster Global Holdings, Inc.*, No. C 10-00628 SI) 2012 U.S. Dist. LEXIS 144691, *12 (N.D.Cal. Oct. 4, 2012), the court noted that "arising" is future tense, which demonstrates an intention to include only "claims that may arise going forward, not claims that have already accrued." (*Id*. at 12-13).

With regard to the "in connection with the use of the Card" language (Dkt. No. 11-4; *see also*, Defs' Memo., 3:19-24), the UCL and CLRA claims are also not covered by such provision for the same reason mentioned above.  "In connection

1   with" means in relation to (something). https://www.merriam-
2   webster.com/dictionary/in%20connection%20with. According to Collins
3   Dictionary, "If you write or talk to someone in connection with something, you write
4   or talk to them about that thing."
5   https://www.collinsdictionary.com/us/dictionary/english/in-connection-with.

6       Plaintiff did not – and could not – "use the Cards," for the funds were
7   unlawfully withdrawn before Mr. Espinoza could "use" them, and the statutory
8   causes of action arose prior to any possible "use" of the Cards.  Therefore, Plaintiff's
9   causes of action exist independent of any "use" of the Cards.  Consequently, the
10  controversies here are not in connection with the *use* of the Cards either.

11      In their Reply Brief, Defendants may take an overbroad view of the meaning
12  of word "use" in an effort to argue that the Cards were essentially used by the third-
13  party bad actor, however, such an argument should be rejected.  There are no
14  allegations, nor was any evidence offered by Defendants, that the third-party bad
15  actor ever used the Cards purchased by Plaintiff, whether before or after Plaintiff
16  purchased them. Plaintiff currently retains custody of both Cards. Also, any
17  ambiguity in the language should be construed against Defendant Green Dot Bank,
18  as Plaintiff did not provide any input into the drafting of the Cardmember Agreement
19  by Green Dot Bank – as it was a form contract. *See Northern P. R. Co. v. Twohy*
20  *Bros. Co.*, 95 F.2d 220, 227 (9th Cir. 1938) ("Like the other provisions of the form
21  contract, any ambiguity in it must be construed against the railway which drafted
22  it.").

23      Plaintiff's ULC and CLRA claims are not based on the alleged Cardmember
24  Agreement. Plaintiff's claims exist independent of the Cardmember Agreement
25  under California's consumer protection laws (*i.e.* the CLRA and UCL). (*See* Compl.,
26  pp. 15 and 19).  Therefore, those statutory claims do not arise out the Agreement,
27  nor are they in connection with the Cardmember Agreement, for the reasons mention
28  above.

Defendants look to isolated allegations in the Complaint to contend that somehow all of Plaintiff's claims are subject to the FSC, because Plaintiff alleges that Defendants misrepresented (*see* Compl., ¶¶ 112-116) that they would honor the limitation on liability over $50. However, Plaintiff does never once asserted a breach of contract cause of action in his Complaint.  Indeed, the Complaint does not even include the word "breach" one single time. (*See* Compl.). The arguments that Plaintiff has brought this suit to enforce the Cardmember Agreement is mere wordplay by Defendants, as only elsewhere do Defendants acknowledge in their Motion that Plaintiff brings claims under the CLRA and UCL (Defs' Motion, 5:7-9).  Here, it is clear that Plaintiff maintains, and has always maintained that he did not agree to arbitrate disputes, and thus challenges his alleged mutual assent to the Cardmember Agreement.

In this case, had Plaintiff included in the Complaint a cause of action for breach of contract, Defendant may have an argument for enforcing the FSC as to such a breach of contract claim only.  However, that is not the case for the statutory causes of action which arose independent of any use of the Cards and thus the Cardmember Agreement, which are the only causes of action noted on the caption page of the Complaint (Compl. pp. 1), and in the Prayer for Relief (Compl. pp. 19). Consequently, the FSC does not apply to Plaintiff's claims, as the only claims asserted are under the CLRA and UCL.

Even if the CLRA and UCL claims were covered by the FSB (which they are not), the FSB should not be enforced because it is contrary to the compelling California public policy of protecting the right to seek public injunctive relief claims, which was laid out by the California Supreme Court in the case of *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017); *see also, Blair v. Rent-A-Center, Inc.,* 928 F.3d 819, 828 (9th Cir. 2019) ("In sum, the *McGill* rule is a generally applicable contract defense derived from long-established California public policy.")

1    Lastly, even if this Court were inclined to enforce the FSB as to Green Dot

2 Bank, it should not be enforced as to the other two Defendants, Green Dot Corp. and

3 Walmart, because the other co-Defendants have not shown any agreement between

4 Plaintiff and themselves to arbitrate said disputes.  The FSB, if applicable, could

5 only apply to claims asserted against Green Dot Bank.   In order words, even

6 assuming that Plaintiff's claims against Green Dot Bank were properly transferred

7 to the District of Utah (essentially being severed from this action), Plaintiff's claims

8 against Green Dot Corp. and Walmart should remain in the Southern District of

9 California, as that is where said claims arose.

10    Therefore, the action should not be transferred from the Southern District of

11 California to the District of Utah, as the action should remain in the present District

12 Court where said dispute arose.

13 **III.   DEFENDANTS' MOTION TO COMPEL ARBITRATION SHOULD**
14 **BE DENIED**

15    Even if there was an agreement to arbitrate Plaintiff's claims, said agreement

16 is not enforceable, because it was the product of coercion. Here, Plaintiff was forced

17 to register the Cards online before Defendants would assist him with the fraud in

18 which Plaintiff lost nearly $1,000, which was to be used to pay his rent, due to

19 Defendants acts of providing unsecured and compromised Cards in unsecured

20 packaging. (Espinoza Decl., ¶¶ 8-13). Thus, the Court and not the arbitrator should

21 decide the issue of arbitrability.

22 **A.    The Arbitration Clause Is Not Enforceable Due to Coercion**

23    The Court must decide whether there is mutual assent with regard to the

24 purported delegation clause (there is not, as explained in Section II.A., above).

25 There must first be an enforceable delegation agreement before the Court has power

26 - which flows from the delegation agreement - to send Plaintiff's claims to the

27 arbitrator for a decision on arbitrability.  Thus, even if the Court finds there is mutual

28 assent to the delegation agreement, this Court must also decide whether the

delegation clause is unenforceable due to a generally applicable contract defense such as coercion. The FAA "imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) (quoting *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989).

Although the U.S. Supreme Court decision in *Henry Schein, Inc.,* cited by Defendants, acknowledges that gateway questions such as whether there is an agreement to arbitrate may be delegated to an arbitrator, such a decision relies upon *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), and *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). In *First Options of Chicago, Inc.,* whereby the Supreme Court explained that "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* at 943. And in reviewing whether there is a delegation agreement, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944. In *Rent-A-Center*, the Supreme Court recognized that even a delegation agreement, which is an additional, antecedent agreement to an arbitration agreement, is valid "save upon such grounds as exist at law or in equity for the revocation of any contract" under § 2 of the FAA. *Id.* at 69-70 (quoting 9 U.S.C. § 2). Thus, delegation agreements regarding who should decide the question of arbitrability may also be found to be invalid by the Court under the Savings Clause found in § 2 of the FAA.

As explained above and incorporated here, any agreement to the delegation clause by Plaintiff's mere visit to Defendant's website in order to receive assistance from Green Dot with the fraud complaint, was a result of coercion by Green Dot who would not help Plaintiff until he registered the Cards online, and therefore not enforceable. Importantly, "'the policy favoring arbitration cannot displace the necessity for a *voluntary* agreement to arbitrate.'" *Victoria v. Superior Court*, 40

Cal. 3d 734, 739 (1985); accord, *Lawrence v. Walzer & Gabrielson*, 207 Cal. App. 3d 1501, 1505 (1989). "Arbitration . . . is a matter of consent, not coercion," *Volt Info. Scis.,* 489 U.S. at 479. *See also*, *Bhari Info. Tech. Sys. Pvt, Ltd. v. Allied Boston Bank, Inc*., No. C 05-01223 SI, 2005 U.S. Dist. LEXIS 40094, at *10 (N.D.Cal. Dec. 19, 2005) (denying motion to compel arbitration due to coercion).

Therefore, the delegation clause (which relates to the arbitration clause) is not enforceable due to coercion. As a result, this Court should decide the arbitrability question, not the arbitrator.

## B. Contrary to Defendants' Assertions, the Arbitration Agreement's Waiver Provision Is Unenforceable

Defendants argue that the provision in the Arbitration Agreement prohibiting class and other "non-individual" claims still *permits* public injunctive relief, as said provision just does not require a claim to be brought as a class or representative action. (Def's Motion, 13:15-23). In support of this argument, Defendants rely heavily on *Lee v. Postmates Inc*., No. 18-cv-03421-JCS, 2018 U.S. Dist. LEXIS 176965 (N.D. Cal. Oct. 15, 2018), wherein that Court ruled that the question of whether *the specifically-worded arbitration clause in that case* barred actions for public injunctive relief was a question for an arbitrator to decide. In support of this, the Court in *Lee* relied on dicta in *McGill* stating that requesting public injunctive relief does not always mean that a Plaintiff is pursuing a representative action. *McGill*, Supra at 636-637.

As an initial matter, the verbiage in the arbitration waiver at issue in *Lee* was very different than the arbitration waiver provision here. In *Lee*, the provision stated:

> The class action waiver in the parties' Fleet Agreement here binds the parties to "individual arbitration," "waive[s] their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action" or "representative action," as well as any right to participate in such actions, and deprives the arbitrator of authority to arbitrate such actions. Cartes Decl. Ex. C § 11B(ii)-(iii). By its terms, the class action

- 13 -

waiver does not prevent the arbitrator from awarding any form of relief that would be available in individual litigation—to the contrary, a separate provision of the section of the Fleet Arbitration governing arbitration provides that, except for the class action waiver, "the arbitrator may award all remedies to which a party is entitled under applicable law and which otherwise be available in a court of law," although the arbitrator may not award relief "that would not have been available in a court of law for the claims presented."

*Lee v. Postmates Inc*., 2018 U.S. Dist. LEXIS 176965, at *27.

The verbiage in Defendants' form agreement, however, is very different than *Lee*, stating:

Individual Claims Only.  Claims may be submitted to arbitration on an individual basis only. Claims subject to this arbitration provision may not be joined or consolidated in arbitration with any Claim of any other person or be arbitrated on a class basis, in a representative capacity **on behalf of the general public** or on behalf of any other person, unless otherwise agreed to by the parties in writing… (emphasis added)

(Ex. B pp. 3).

Unlike the provision in *Lee,* wherein Postmates barred collective and representative actions, but specifically provided that the arbitrator could still award any remedy available under applicable law, the provision in Cardmember Agreement specifically bars any action "…*on behalf of the general public*…."

Furthermore, the decision in *Lee* is currently on appeal pending a decision as to its validity, and it cites only to one other District Court case that has ever ruled similarly to support said legal conclusion.  The *Lee* Court cites to *Devries v. Experian Info. Sols., Inc*., No. 16-cv-02953-WHO, 2017 U.S. Dist. LEXIS 84255, at *6-7 (N.D. Cal. June 1, 2017), and most notably pointed out that in the *Devries* case, after the Court ordered the issue of whether the arbitration agreement was permissible under *McGill*, the arbitrator filed an order ruling that public injunctive relief and UCL claims could not be arbitrated under the verbiage of the representative action waiver, thus ultimately returning the matter to the District

Court. *Lee*, Supra at *28-29. Here, Defendants' Arbitration Agreement specifically excludes actions on behalf of the general public – thus their attempt to recast that clear verbiage as somehow permitting claims such as Plaintiff's is unavailing as it contradicts the very verbiage in said Arbitration Agreement.

### C.  The Arbitration Agreement is Not Valid, it is Not Enforceable, Nor Does it Encompass Plaintiff's Claims

Plaintiff could not have consented to the Cardmember Agreement's terms by purchasing the pre-paid cards, and as a result his claims cannot fall within the scope of the Cardmember Agreement. Here, Defendants argue that Plaintiff and Defendants consented to enter into final and binding arbitration as a result of Plaintiff purchasing the two pre-paid Walmart Visa Gift Cards (Motion 23:15-23). Defendants, however, simply *assume* that said consent was present. In actuality, unlike a credit card or other financial credit instrument where Plaintiff is provided with the Cardmember Agreement and disclosures *before* applying for the extension of credit (and thus is able to actually consent to said credit card's terms), in this case the Cardmember Agreement is contained inside the packaging and cannot be viewed by Plaintiff prior to him purchasing the subject Walmart Visa Gift Cards (Def.'s Ex. A).

Defendants' own Motion argues that by purchasing the Cards, Plaintiff accepted the terms of the Agreement, by stating, "Green Dot Bank offered Plaintiff the Gift Cards subject to the terms of the Card Agreement, including the Arbitration Agreement." (Motion, 23:8-10). This, however, is a factual impossibility as Plaintiff could not accept terms that were not disclosed to him as part of an offer.

As discussed more thoroughly above, Defendants' conclusory statements regarding Plaintiff's "acceptance" evidences no offer, nor acceptance, and certainly does not evidence a mutual assent to settle this dispute via arbitration by the Parties. No reasonable person would infer that by virtue of purchasing a Visa gift card, they somehow assented to the terms of an unknown Cardmember Agreement, especially

an agreement that cannot be read, because it was enclosed inside the packaging and not visible to Plaintiff prior to purchasing said cards.  Plaintiff, and all those similarly situated, are only provided with the "Offer" for a card subject to the Cardmember Agreement *after* they have allegedly "accepted" said offer to purchase the gift cards. This cannot be a method for assenting to a Contract, under either Utah or California law.

Furthermore, Defendants simply ignore that the alleged conduct that forms the basis of Plaintiff's claims occurred *prior* to Plaintiff even being offered the terms of the Cardmember Agreement, as Plaintiff alleges that Defendants knowingly sold and packaged the Visa debit cards in unsecured packaging making them unreasonably susceptible to fraudulent activity. All acts that occurred before even Plaintiff purchased and gained access to the subject Cardmember Agreement.

### D.   Plaintiff is Not Equitably Estopped from Refusing to Arbitrate Disputes Against Defendants Walmart and Green Dot Corp.

Defendants contend that because Plaintiff alleges concerted misconduct between the three Defendants that Plaintiff is estopped from refusing to arbitrate disputes asserted against Defendants Walmart and Green Dot Bank, who are non-signatories to the Cardmember Agreement – this is incorrect.

Plaintiff's statutory claims arose independent of the Cardmember Agreement. In other words, Plaintiffs claims under the CLRA and UCL are not dependent on the Cardmember Agreement, as explained above.

The controlling decision in *Rahmany v. T-Mobile USA Inc*., 717 F.App'x 752, 753 (9th Cir. 2018) is instructive.  That case involved claims by two plaintiffs under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") against Subway Sandwich Shops, Inc. ("Subway") for unwanted telephonic contact on their cell phones made by the alleged agent of Sunway, T-Mobile USA, Inc.   The defendant Subway sought to enforce an arbitration agreement between the plaintiffs and a non-party T-Mobile USA, Inc. (who had been dismissed from the action

- 16 -

voluntarily), arguing estoppel due to alleged asserted misconduct. However, on appeal, the Ninth Circuit Court of Appeals held that Subway, a non-signatory, could not employ the doctrine of estoppel to compel arbitration of the TCPA claims because the TCPA claims did not seek to enforce the wireless telephone service agreement. The Court of Appeal stated:

> Although Rahmany's complaint alleges that he did not provide "prior express written consent" to receive the text messages at issue, such an allegation does not constitute a "claim of [a] violation" of the Wireless Agreement. *Id.* The TCPA, not the Wireless Agreement, creates and defines any alleged duty to refrain from sending an unwanted text message.

*Rahmany*, 717 F.App'x at 753.

The Court of Appeals then held that the "Rahmany's *claims* do not 'rely on the terms of the [Wireless Agreement],' nor does Rahmany allege 'substantially interdependent and concerted misconduct' between Subway and T-Mobile that is 'founded in or intimately connected with the obligations of the [Wireless Agreement].'" *Id.* (citations omitted).

Very similar to *Rahmany*, Mr. Espinoza's CLRA and UCL claims here do not seek to enforce the Cardmember Agreement. As argued above, Plaintiff does not assert a breach of contract claim and does not seek to enforce the Cardmember Agreement. Rather, Plaintiff refers to the Cardmember Agreement's limitation on liability to the consumers for fraud only to show *misrepresentations* by Defendants. (*See* Compl., ¶¶ 70, 90, 106, and 112.)

In other words, even if Defendant Green Dot Bank had not included in the Cardmember Agreement a provision to cover liability exposure to consumers to $50.00, Plaintiffs' UCL and CLRA claims would still apply to Defendants' advertising and/or selling of unsecured/compromised gift cards, which arose prior to any possible assent to the Cardmember Agreement. Plaintiff's claims exist wholly independent of the Cardmember Agreement (i.e. "using unsecured packaging of said

pre-paid visa card") (*See* Compl., ¶¶ 19, 28, 33, 35-36, 42, 46, 66, and Prayer for Relief). Thus, Plaintiff's Complaint for advertising and selling unsecured and/or compromised prepaid Visa gift cards does not allege substantially interdependent and concerted misconduct between Defendants Walmart and Green Dot Corp. on the one hand, and Defendant Green Dot Bank on the other hand, that is founded in or intimately connected with the *obligations* of the Cardmember Agreement.

Therefore, even if Defendant Green Dot Bank could compel arbitration of Plaintiff's claims, Defendants Walmart and Green Dot Corp. (non-signatories and not Parties to the Cardmember Agreement) may not take advantage of the Cardmember Agreement under the theory of estoppel with regard to Plaintiffs' claims that are not based on said agreement.

## E.   Under *Blair* and *McGill,* the Arbitration Agreement is Unenforceable As To Plaintiff's Claims for Public Injunctive Relief

### 1.   The Arbitration Agreement Prohibits Public Injunctive Relief, and is Unenforceable

As discussed in detail above, contrary to Defendants' assertions, California law not Utah law governs this dispute, and the Arbitration Agreement at issue. As discussed at length above, Defendants' waiver clause in their Arbitration Agreement, *does in fact* prohibit Public Injunctive Relief from being brought through arbitration or *any* other forum, and as a result, runs afoul of *McGill* and is unenforceable. The waiver clause states:

> Individual Claims Only. Claims may be submitted to arbitration on an individual basis only. Claims subject to this arbitration provision may not be joined or consolidated in arbitration with any Claim of any other person or be arbitrated on a class basis, in a representative capacity **on behalf of the general public** or on behalf of any other person, unless otherwise agreed to by the parties in writing… (emphasis added)

(Ex. B pp. 3)

Unlike cases wherein arbitration agreements have barred only class claims, here, Defendants' arbitration agreement specifically bars Plaintiff from arbitrating his claim "in a representative capacity *on behalf of the general public*..."  The additional verbiage makes clear that Defendants' are barring claims for public injunctive relief from being arbitrated.  Despite their assertions to the contrary in their Motion, Defendants cannot circumvent the very words they chose to place in their own arbitration agreement.  Just as with other examples of arbitration agreements that bar only class actions and representative actions, Defendants could have only stated that.  Here, however, they made clear that Plaintiff cannot bring claims on behalf of the general public.  Therefore, since there is no other claim that could be brought on behalf of the general public other than a claim for public injunctive relief, the subject Cardmember Agreement is unconscionable pursuant to the California Supreme Court's ruling in *McGill*.

Notably, *nowhere in their Motion do Defendants address that verbiage in the form agreement.*  The reason they omit their own verbiage from their Motion, is because the plain meaning of the sentence cannot be overcome.  Defendants' arbitration agreement's waiver clause explicitly bars Plaintiff from seeking relief *on behalf of the general public*.  By doing so, it denies Plaintiff a *substantive* right (i.e. a right to bring actions on behalf of the general public), not simply a *procedural* right (i.e. a means by which Plaintiff could assert his claims).  As such, it is unenforceable and void pursuant to the California Supreme Court's ruling in *McGill v. Citibank*, N.A., 2 Cal. 5th 945, 965-66, (2017), and the Ninth Circuit's ruling in *Blair*, 928 F.3d at 827.

### 2.   Plaintiff's Complaint Seeks Public Injunctive Relief

Defendants' Motion alleges that Plaintiff's claims do not seek Public Injunctive Relief, because Plaintiff seeks redress for prior harm (Motion, pp. 22, ll. 25-28).  Defendants additionally asserts that Plaintiff's request for an injunction

requiring Defendants to alter their packaging *going forward* is public injunctive relief in name only (Motion, pp. 23, ll. 7-18).

Defendants' arguments, however, are conclusory and not based in law or fact. Cal. Bus. & Prof. Code § 17203 specifically enables an individual to enjoin unlawful business practices going forward, *and requires for standing purposes* that the individual asserting said claims has suffered actual injury and has lost money or property as a result of said unlawful business practice. Defendants' essentially argue that if Defendants were to engage in offering an unfair, misleading, or unlawful service or product, no consumer could ever act as a private attorney general pursuant to Cal. Bus. & Prof. Code § 17203, because once they purchased the product or service, they are transformed into a discrete, inward-facing group, and no longer can seek redress on behalf of the general public.

The Ninth Circuit has already rejected this argument in the context of false advertising claims, holding, "[w]ere injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, California's consumer protection laws would be effectively gutted, as defendants could remove any such case." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115-1116 (9th Cir. 2017). Defendants never substantively address that Plaintiff's Complaint alleges that Defendants' unlawful practices are ongoing. Similarly, Defendants do not address any of Plaintiffs' allegations or claims for relief beyond Plaintiffs' definition of its class members (i.e., parties who by definition must have already suffered harm from Defendants to have standing). The distinction between redressing past wrongs and stopping an ongoing future harm is the key distinction between plaintiffs who are truly seeking public injunctive relief and those who are not. *See Kilgore v. KeyBank, Nat'l Ass'n,* 718 F.3d 1052, 1061 (9th Cir. 2013).

Defendants' claim that the requested relief in Plaintiff's Complaint is not "public" injunctive relief, merely because the Plaintiffs and Class definition are "similarly situated," is a legal impossibility because if that standard were correct, it

would essentially eliminate all claims for Public Injunctive relief under any legal theory – as an actual financial injury is required to have standing to bring a Private Attorney General Action. See *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1000 (2009) ("The law now requires that a representative claim, that is, a claim seeking relief on behalf of others [id., § 17203], may be brought only by a 'person who has suffered injury in fact and has lost money or property as a result of the unfair competition' [id., § 17204]").

Thus, Plaintiff's Complaint properly seeks public injunctive relief, and therefore *McGill* and *Blair* is applicable to Plaintiff's claims.

### 3.   Plaintiff Has Standing to Assert His Claims

In their Motion, Defendants argue that Plaintiff lacks standing to bring his claims, because his request for an injunction barring Defendants from continuing to sell Visa gift cards in their current packaging is not "actual" nor "imminent" (Motion, 24:18-23).  Defendants buttress this claim by stating that as Plaintiff's alleged harm already occurred, he is not in actual or imminent risk of it occurring again (Motion, 24:25-26).

Defendants' arguments regarding Plaintiff lacking standing are circular and unpersuasive. Here, Defendants fail to support these fallacious arguments with supporting case law, nor admissible evidence. Defendants on the one hand claim that by including the redress of past harm, Plaintiff is not genuinely bringing claims for public injunctive relief.  However, on the other hand, Defendants are arguing that once they conduct an unlawful business practice, and Plaintiff suffers actual injury (and therefore has standing), that then Plaintiff is unlikely to use their services again, and as a result they insulate themselves from the need for an injunction since they will not likely have future harm.  Similar as to Defendants' arguments regarding the validity of Plaintiff's claim for Public Injunctive Relief, if Defendants' arguments were correct, then there could be no private individual who would ever meet the

standing requirements of Cal. Bus. & Prof. Code § 17204, and still bring a claim for public injunctive relief.

By obtaining standing and suffering the loss of money or property due to an unlawful or unfair business practice, any potential Plaintiff would be converted into a customer and not a member of the general public if this Court were to affirm Defendants' arguments regarding standing. As discussed in *Blair*, and all other cases addressing a plaintiff's standing to bring public injunctive relief claims, such a conclusion is a legal impossibility. *See e.g.*, *Eiss v. USAA Fed. Sav. Bank*, No. 19-cv-00108-EMC, 2019 US Dist. LEXIS 144026 at *36-37 (N.D. Cal. Aug 23, 2019) (holding that virtually the same arguments were "untenable.")

### 4.   The FAA Does Not Pre-Empt *McGill*

Defendants concede that this argument is currently foreclosed by *Blair,* 928 F.3d at 827, and aver only that they wish to preserve this argument for appeal purposes (Motion, 25:8-12 & fn. 6). Similarly, Plaintiff contends that this argument is foreclosed by multiple Ninth Circuit controlling case law, including *Blair*, and similarly reserves their right to oppose any such claim on appeal. Therefore, since this Court is bound by Ninth Circuit authority, Defendants' arguments regarding preemption should be disregarded.

### F.   Plaintiff Requests the Court Deny Defendants Motion in its Entirety, Making the Issue of Staying vs. Dismissal Moot

For the reasons stated herein, Plaintiff requests the Court deny Defendants' Motion, and thus make any request to stay the matter or dismiss the action moot. If, however, this Court were to grant Defendants' Motion, Plaintiff joins Defendants in requesting that the Court stay the matter as opposed to dismissing it.

## IV.   CONCLUSION

In sum, the Defendants' motion to transfer or compel arbitration should be denied in its entirety. To the extent the Court finds a factual dispute concerning whether Plaintiff assented to the Cardmember Agreement, such dispute should be

resolved by an evidentiary hearing. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *see also*, *Glover v. Comenity Capital Bank*, No. 3:16-cv-01785-BEN-BLM, 2017 U.S. Dist. LEXIS 68907, at *6 (S.D. Cal. Apr. 24, 2017) (ordering trial for resolutions of disputed arbitration issues).

Dated: January 17th, 2019      By:   /s/ Ahren A. Tiller_____
                                       Ahren A. Tiller, Esq.
                                       BLC Law Center, APC
                                       *Attorneys for Plaintiff*

Additional Counsel for Plaintiff
**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
Nicholas R. Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 8479
Telephone: (800) 400-6808
Facsimile: (800) 520-5523